IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| DENIA WILBURN, Individually and for Others Similarly Situated, *Plaintiff*, v. ONSLOW MEMORIAL HOSPITAL, INC., *Defendant*. | Case No. 7:25-cv-00797-D-RJ |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CERTIFICATION OF COLLECTIVE ACTION AND FINAL APPROVAL OF FLSA SETTLEMENT

Named Plaintiff Denia Wilburn, Individually and for Others Similarly Situated ("Named Plaintiff") and Defendant Onslow Memorial Hospital, Inc. ("Defendant) (together, the "Parties") by and through their undersigned counsel, jointly request final approval of a Fair Labor Standards Act Settlement Agreement and Release (the "Settlement Agreement" or "Agreement"). The parties request the Court: (a) certify the FLSA collective action for settlement; (b) grant final approval of the Agreement; and (c) enter judgment under the Agreement and dismiss this matter with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On December 12, 2025, the Parties filed their Joint Motion for Conditional Certification of Collective Action, Preliminary Approval of Settlement, and to Facilitate Notice of Proposed FLSA Settlement (Dkt. 24) and supporting Memorandum (Dkt. 24-1) ("Joint Motion for Conditional Certification"), which the Court granted on December 30, 2025. (Dkt. 27). The Declaration of Attorney Carl Fitz, which contains a detailed description of the Agreement and other facts relevant to final approval of the Agreement, is filed contemporaneously with this Motion. ("Fitz Decl.")

1

The parties' Settlement Agreement was previously filed as an exhibit to the Joint Motion for Conditional Certification. (Dkt. 24-2).

On January 10, 2026, the Claims Administrator mailed and e-mailed the Court-approved settlement documents to the thirty-two prospective collective action members who were eligible to assert a claim pursuant to the terms of the Agreement (the "Eligible Employees"). (Fitz Decl., ¶ 18). Fifteen of the thirty-two Eligible Employees timely submitted Claim Forms and became Collective Members. (Dkt. 28-30). No Eligible Employees objected to the settlement terms. (Fitz Decl., ¶ 21).

Accordingly, the Parties respectfully request that the Court certify this case as a collective action and grant final approval of the Settlement Agreement, including: (a) approving distribution of the Net Settlement Fund in the amount of $23,969.86; (b) approving attorneys' fees to Collective Counsel of $15,000, which is equivalent to less than 25% of the Maximum Settlement Amount, as provided under the terms of the Agreement; (c) approving payment of the costs associated with Settlement Administration, in the amount of $694.46; and (d) approving a service award payment of $5,000 to Named Plaintiff Denia Wilburn. For the reasons asserted herein, the Parties respectfully request that the Court grant the instant Joint Motion.

## ARGUMENT AND CITATION TO AUTHORITY

**I. THE COURT SHOULD CERTIFY THE FLSA COLLECTIVE ACTION AND APPROVE THE AGREEMENT**

    **A. The Court Should Certify the FLSA Collective for Settlement Purposes Because Plaintiff and Collective Members Are Similarly Situated**

Pursuant to the Agreement and for settlement purposes only, the Parties agreed that Plaintiff and the Collective Members are similarly situated in accordance with the Fair Labor Standards Act ("FLSA"). (Dkt. 24-2). In granting preliminary approval of the Agreement, the Court conditionally

certified this matter as a collective action and authorized sending notice to the Eligible Employees. (Dkt. 27). The Parties adhere to their position that for settlement purposes, and following the opt-in period, Named Plaintiff Denia Wilburn is similarly situated to the Collective Members and the Court properly granted conditional certification. There being no reason to decertify the collective action, the Court should grant final certification of the collective action for the purposes of settlement.

B. **Applicable Legal Standard for Approval of FLSA Settlements**

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and if it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). Courts generally review three factors in assessing approval of a settlement agreement under these circumstances: "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement agreement in light of the relevant factors from Rule 23, and (3) the reasonableness of attorneys' fees. *Reynolds v. Fidelity Investments Institutional Ops. Co., Inc.*, 2020 WL 91874 at *4 (M.D.N.C., Jan. 8, 2020). All of these factors merit final approval of the settlement here.

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns present in a Rule 23 settlement. *Reynolds*, 2020 WL 91874 at *4. Unlike Rule 23, "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). Generally, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case

3

Case 7:25-cv-00797-BO-RJ    Document 31-1    Filed 02/20/26    Page 3 of 15

went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

### C. The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009) (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). In her Amended Complaint, Named Plaintiff asserted a collective action claim pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, based on Named Plaintiff's allegation that Defendant failed to compensate her and members of the proposed collective action for work performed during meal breaks that were "missed," "interrupted," and/or "not *bona fide*." (Dkt 19). There is no question that there are *bona fide* FLSA issues in dispute in this case. Defendant denies the allegations made by Named Plaintiff and asserts that its pay policies were lawful in all respects, and it further denies that Named Plaintiff or the Collective Members are entitled to any additional compensation whatsoever. (Fitz Decl. ¶ 10).

Specifically, in contrast to the allegations contained in the Amended Complaint, Defendant has asserted, among other things, that Named Plaintiff and the putative Collective Members were properly paid, and that Named Plaintiff and the putative Collective Members are not "similarly situated" outside of the settlement context. (Fitz Decl. ¶ 10). Similarly, as a matter of law, "[A]utomatic meal-deduction systems are perfectly lawful under the FLSA." *Marshall v. Novant Health, Inc.,* No. 3:18-cv-00633, 2020 WL 5577888, at *7 (W.D.N.C. Sep. 17, 2020). Defendant has asserted that, contrary to the allegations contained in Named Plaintiff's Amended Complaint, Defendant has at all times during the relevant period maintained well-disseminated

policies and practices whereby any employee who missed a meal break can override the deduction and receive compensation. (Fitz Decl. ¶¶ 10-11). Defendant has further adduced evidence that Named Plaintiff utilized this meal break deduction override process during her employment. (*Id*.). Defendant further denies that it ever had any actual or constructive knowledge or any alleged uncompensated meal breaks, as alleged in the Amended Complaint. (*Id*.). Accordingly, Defendant contends that it is not liable to Named Plaintiff or the Collective Members in any manner whatsoever, and it is entering into the Settlement Agreement solely to avoid the time and expense of protracted litigation, and to "buy its peace." The terms of the Settlement Agreement are therefore reasonable in light of, among other things, the defenses asserted by Defendant in this litigation. Because significant factual and legal questions remain regarding liability and damages, the Court should find the existence of a *bona fide* dispute.

### D. The Settlement is Reasonable, Adequate and Fair

In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement, whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo*, 2009 WL 3094955, at *10.

Here, the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes regarding certification, liability and, assuming FLSA violations had occurred, amounts due. (Fitz Decl. ¶¶ 12-17) The determination of whether a settlement amount is

5

reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g.*, *Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

Collective Counsel analyzed payroll records and estimates provided by Plaintiff and other Eligible Employees and determined the pay allegedly owed to Plaintiff and the Eligible Employees. (Fitz Decl. ¶ 15) The Net Settlement Fund provides for approximately 80% of the estimated wages allegedly owed to Plaintiff and the Collective Members. (*Id.* at ¶ 20.) This is an excellent settlement recovery and is a fair and reasonable resolution of the dispute considering Defendant's defenses and should be approved. The terms of the settlement reflect the fact that, among other things: 1) in the absence of settlement, Defendant would have vigorously contested both certification and the merits of Plaintiff's FLSA claims; 2) that no records exist demonstrating the actual amount of alleged uncompensated time allegedly worked by Plaintiff and the Eligible Employees; and 3) that Defendant contends liquidated (or double) damages are not available to Plaintiff and the Eligible Employees. (*Id.*) As demonstrated below, the Agreement is reasonable, adequate, and fair, based on the factors to be considered by the Court.

6

### 1. The Parties Exchanged Sufficient Discovery to Reach a Fair Settlement of this Action

Although the Parties did not engage in formal discovery, they voluntarily shared payroll records, personnel records, and other data. (Fitz Decl. ¶¶ 12-17). Plaintiff and Collective Counsel reviewed, analyzed, and formulated potential damage calculations under the FLSA for herself and the Eligible Employees. (*Id.*). Collective Counsel further interviewed Plaintiff regarding the facts and defenses at issue. (*Id.*). Plaintiff concluded she had sufficient information about Plaintiff's claims and Defendant's defenses from which to fairly settle her case. The amount of discovery was sufficient and supports approval of the settlement. *See, e.g., Myers v. Loomis Armored US, LLC*, 2020 WL 1815902 at *4 (W.D.N.C. Apr. 9, 2020) (noting that the key inquiry is not necessarily the amount of formal discovery, but instead whether plaintiff "had access to sufficient information to evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

### 2. The Ultimate Outcome of this Action is Unknown

The complexity, expense, and likely duration of this litigation also weigh heavily in favor of the Court finding that the settlement is adequate, fair, and reasonable. Resolution of the disputed issues would require substantial time and resources, including dispositive motions, conditional certification and decertification, the potential of a multiple-day trial, and possible appeals and post-trial motions. (Fitz Decl. ¶¶ 12-17). The ultimate issue regarding the number of hours worked and the ability to recover liquidated damages presents a legitimate risk that Plaintiff and Collective Members could win at trial but recover an amount significantly less than the settlement recovery. (*Id.*) Although these issues remain unresolved, counsel for the Parties had sufficient information to assess the respective strengths and weaknesses of their case and conclude that the Settlement is in the best interests of the Parties. (*Id.*)

### 3. The Settlement Was Fairly and Honestly Negotiated

The Settlement reached by the Parties is the product of good faith negotiations. (Fitz Decl. ¶¶ 12-17). The terms of the Agreement were established after arms-length negotiations and careful deliberation. (*Id.*) The Agreement provides the certainty of a recovery for Plaintiff and the fifteen Collective Members who participated in the settlement.

### 4. Plaintiff and the Collective Were Represented by Experienced Counsel

Plaintiff and the Collective Members had the benefit of legal counsel with extensive knowledge and experience in wage and hour litigation. (*Id.* at ¶¶ 3-6). The undersigned counsel was familiar with the facts and law in this case and has negotiated numerous FLSA collective action settlements. (*Id.*) Plaintiffs' Counsel has extensive experience in litigating FLSA collective action and state wage and hour law class action settlements, having filed and prosecuted over 200 distinct wage lawsuits since 2017. (Fitz Decl. ¶¶ 4 – 6). In fact, late last year, Judge Boyle approved a settlement negotiated by Fitz Law as "fair and reasonable." *See Desoto v. Woodbury Wellness Center*, No. 7:24-cv-00464-BO-RN, Doc. 41 (E.D.N.C. Oct. 17, 2025).

### 5. Collective Counsel and Plaintiff Support the Agreement

In Collective Counsel's view, the Agreement provides substantial benefits to Plaintiff and the Collective Members considering the attendant risks, difficulties, delays and uncertainties of litigation, trial, and post-trial proceedings. (Fitz Decl. ¶¶ 12-17). The Agreement provides relief to Plaintiff and the Collective Members and eliminates the inherent risks both sides would bear if this case continued. Under these circumstances, there is a strong presumption of fairness. *See Lomascolo*, 2009 WL 3094955, at *10 (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable

… A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel"). Plaintiff was apprised of the terms of the Agreement and authorized Collective Counsel to accept the Settlement. (Fitz Decl. ¶¶ 12-17). More importantly, the Eligible Employees were provided notice of the settlement. There were no objections. (*Id.* at ¶ 24). Fifteen of the thirty-two Eligible Employees opted-in to the lawsuit, claiming the majority of the Net Settlement Fund.

### 6. The Probability of Success on the Merits

The probability of Plaintiff's success on the merits and other ancillary issues is strongly disputed by the Parties. (*Id.* at ¶13.) Conditional certification (absent settlement) was not certain, and even if granted, decertification following additional discovery was possible (and, according to Defendant, likely). Further, the range of potential recovery is untested – there are no definitive records of the alleged uncompensated time Plaintiff and Collective Members worked during the Relevant Time Period, and Defendant maintains it would contest such estimates. (*Id.* ). In settling this matter, Plaintiff acknowledged the strengths and weaknesses of the claims, and the economic realities of collecting a judgment potentially years from now. Ultimately, the result reflects a favorable compromise that provides 80% of the estimated unpaid wages, free and clear of attorney's fees paid to Collective Counsel. (*Id.*) The Court should find that the Agreement is reasonable, adequate, and fair.

### E. <u>The Amount of Attorneys' Fees Sought is Reasonable and Should Be Approved</u>

The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be

9

paid by the defendant, and costs of the action."); *Lane v. Ko-Me, LLC*, Case, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011).

Under the Agreement, Collective Counsel seeks fees equal to $15,000. (Fitz Decl. ¶ 25). The requested attorney's fees, which are less than 25% of the Maximum Settlement Amount, are presumptively reasonable. *See, e.g., Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (collecting cases). This is especially true given the favorable result obtained by Plaintiffs' counsel. After attorney's fees and costs are deducted, Plaintiff's counsel estimates that the Plaintiffs will receive greater than 80% of their alleged unpaid compensation for "missed" meal breaks. *See* Fitz Decl. ¶ 20. This is a favorable result, considering Defendant contested both liability and the quantity of damages throughout this case, and the risk that Onslow could prevail on summary judgment. Defendant disagreed vehemently with many of the assertions in Named Plaintiff's Complaint and was poised defend the pay practices at issue. *See* Fitz Decl. ¶ 13. Over the course of this litigation, the Parties strongly contested, among other things, whether Plaintiff (or the Putative Class Members) performed work that constituted compensable time under the FLSA, and whether Defendant's automatic deduction pay practice violated the FLSA. *See Id.*

"In evaluating the reasonableness of attorneys' fees under the common-fund doctrine in class action cases, courts generally examine the following factors: '(1) the results obtained for the class, (2) the quality, skill and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy.'" *DeWitt v. Darlington County, S.C.*, 2013 WL 6408371, at *7 (quoting *Kay Co.*, 749 F. Supp. 2d 255, 464 (S.D. W.Va. 2010); *see also Scott v. Family Dollar Stores, Inc.*, 2018 WL

1321048, at *5 (W.D.N.C. March 14, 2018). Analysis of these factors demonstrates that Collective Counsel's fee award is reasonable and should be approved.

First, the results obtained by the collective action are favorable. Success warranting attorneys' fees occurs when the moving party prevails "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit. *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir. 1994). Plaintiff filed this action as a collective action under the FLSA. Plaintiff was successful in providing notice of this lawsuit to the other 32 Eligible Employees who now have knowledge of their legal rights. (Fitz Decl. ¶18.) Plaintiff also recovered approximately 80% the alleged unpaid wages she and the Collective Members assert they worked during the Relevant Time Period. (*Id.* ¶20.)

Plaintiff's lawsuit alleges only one claim – a violation of the FLSA based on Defendant's alleged failure to pay for work performed during meal breaks that were "missed," "interrupted," and/or "not *bona fide*." (Complaint, Dkt. 1.) The Maximum Settlement Amount of $75,000 provided Plaintiff and the Collective Members approximately 80% of their estimated alleged unpaid overtime, plus payment of their counsel's attorney's fees and costs. (Fitz Decl. ¶ 20) The relief obtained under the FLSA is excellent. Defendant does not concede liability and still contends that, absent settlement, conditional certification is not warranted, and that Plaintiff and the Collective Members should receive no allegedly unpaid wages or liquidated damages under the FLSA. (*Id.* at ¶ 13). The Agreement reflects a compromise that recognizes both the strengths and weaknesses of the Parties' respective arguments. (*Id.* at ¶ 12). This factor supports the approval of Collective Counsel's attorney fee request.

Second, with respect to the "quality, skill, and efficiency of the attorneys involved," "Employment law is a very dynamic area of the law, requiring counsel to stay abreast of

developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure ...." *DeWitt*, 2013 WL 6408371, at *11. Plaintiff's lead attorney, Carl Fitz's, substantial experience litigating wage and hours cases allowed Plaintiff to obtain a favorable result in an effective and efficient manner. (*Id.* at ¶¶ 2-7.) Mr. Fitz's experience allowed the parties to stipulate to conditional certification, avoiding the motion practice typically associated with this process. (*Id.*) Similarly, Mr. Fitz's experience resulted in a settlement with no expensive discovery and dispositive motion practice. This case could have involved protracted litigation over conditional certification, the FLSA's regulations, liability, and damages. Instead, Mr. Fitz drew on his extensive experience to obtain the information to negotiate the settlement, without engaging in any wasteful litigation activities. (*Id.*) This factor supports the approval of Collective Counsel's attorney fee request.

Third, with respect to the complexity and duration of the case, courts have recognized that wage and hour cases involve complex legal issues. *See, e.g.*, *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law … These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."); *DeWitt*, 2013 WL 6408371, at *8 ("In the Court's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law"). Resolution required Collective Counsel to assess and analyze Plaintiff's and Eligible Employees' records over the Relevant Time Period and estimate the number of unpaid overtime hours worked. The varied time allegedly worked by Eligible Employees made this computation

12

challenging. (*Id*. at ¶14.) The complexity warrants approval of the fee requested by Collective Counsel.

Fourth, with respect to risk of non-payment, Collective counsel handled this case on a contingency fee basis with no assurance of payment for their services. (*Id*. at ¶ 26). Under these circumstances, the risk of non-payment weighs in favor of the award of fees requested by Collective Counsel. This factor supports the approval of Collective Counsel's attorney fee request.

Fifth, with respect to awards in similar cases, attorney fee awards in common fund cases are often calculated as a percentage of the fund created. In this Circuit, numerous courts have awarded fees equal to one-third of the total settlement fund. *See, e.g.*, *DeWitt*, 2013 WL 6408371, at *9 ("One-third of the recovery appears to be a fairly common percentage in contingency cases …"); *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368-69 (D. Md. 2016) (awarding one-third of settlement amount); *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 WL 5037836, at *5 (D. S.C. Aug. 26, 2015) ("After reviewing awards in other wage and hour cases brought as FLSA collective actions and class actions, it appears that the percentage requested here is reasonable. In a number of cases, courts found that a fee-award of one-third of the settlement fund was reasonable"). This factor supports the approval of Collective Counsel's attorney fee request, as the fee request is less than 25% of the Maximum Settlement Amount.

Sixth, with respect to the "objections" element, notice of this settlement, which explained the terms of the Agreement (including the payment of attorneys' fees), Eligible Employees' rights under the Agreement, was mailed and e-mailed to the 32 Eligible Employees. (Fitz Decl. ¶ 18). No objections were submitted. (*Id*. at 24) The lack of objections supports the reasonableness of the requested award and supports approving it. *See Berry v. Schulman*, 807 F.3d 600, 618-19 (4th Cir. 2015) (stating that few objections provide support for a showing of reasonableness of the fee

13

request) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975)). This factor supports the approval of Collective Counsel's attorney fee request.

Seventh, public policy weighs in favor of granting Collective Counsel's requested fees. "Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Latham*, 2014 WL 464236, at *2 (citing *Aros v. United Rentals, Inc.*, 2012 WL 3060470, at *4 (D. Conn. July 26, 2012)). "Public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these cases and to provide incentives for plaintiffs' counsel to take such cases." *DeWitt*, 2013 WL 6408371, at *10. This factor supports the approval of Collective Counsel's attorney fee request.

### F. The Court Should Approve Settlement Administration Costs and Expenses

Collective Counsel request reimbursement of $694.46 in costs associated with settlement administration from the Net Settlement Fund under the Settlement Agreement.[4] (Fitz Decl. ¶). "Attorneys may be compensated for litigation expenses 'reasonably incurred by counsel in prosecuting a class action.'" *In Re Wachovia Corp.*, 2011 WL 5037183, at *7; *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md 2014) (reimbursable costs include "reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client," including costs associated with filings and travel).

### CONCLUSION

Based upon the foregoing reasons, Named Plaintiff respectfully requests that the Court grant the parties' Joint Motion for Certification of Collective Action and Final Approval of FLSA Settlement.

Respectfully submitted this 20th day of February, 2026.

| | |
|---|---|
| COUNSEL FOR DEFENDANT<br>ONSLOW MEMORIAL HOSPITAL, INC. | CO-COUNSEL FOR PLAINTIFFS |
| WYRICK ROBBINS YATES & PONTON LLP | FITZ LAW PLLC |

BY: */s/ Cullen Stafford*
   T. Cullen Stafford
   NC Bar No. 48872
   4101 Lake Boone Trail, Suite 300
   Raleigh, NC 27607
   Telephone: (919) 781-4000
   Facsimile: (919) 781-4865
   Email: cstafford@wyrick.com

BY: */s/ Carl Fitz*
   Carl A. Fitz
   Texas Bar No. 24105863
   Fitz Law PLLC
   3730 Kirby Drive, Suite 1200
   Houston, Texas 77098
   Telephone: (713) 766-4000
   carl@fitz.legal

MIANO LAW PC

BY: */s/ Bert Miano*
   Bert J. Miano
   N.C. State Bar No. 49813
   301 South McDowell Street
   Charlotte, North Carolina 28204
   Suite 125 - 1352
   Phone: (704) 275-7199
   Fax: (704) 630-7199
   Email: bmiano@mianolaw.com